

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00510-CV

———————————————————

IN THE INTEREST OF L.C., A CHILD

On Appeal from County Court at Law
Hood County, Texas
Trial Court No. CL2018146

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellee Mother filed a petition to terminate Appellant Father's parental rights to his child L.C.[1] Following a bench trial, the trial court signed an order terminating Father's parental rights. In this ultra-accelerated appeal,[2] Father contends in four issues that (1) the evidence is insufficient to support termination under Family Code Section 161.001(b)(1)(L) based on Father's having been convicted or placed on community supervision for the death or serious injury of a child because res judicata barred the trial court from considering any of his conduct that occurred before the signing of the final divorce decree terminating his marriage to Mother; (2) the evidence is insufficient to support the trial court's Section 161.001(b)(1)(F) finding that Father failed to support L.C. in accordance with his ability during a one-year period ending within six months of the date that the petition was filed; (3) the evidence is insufficient to support the trial court's best-interest finding; and (4) the trial court abused its discretion by failing to appoint an attorney ad litem or amicus attorney for L.C. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(F), (L), (2); *see also id.* § 107.021(a-1). We will affirm.

---

[1]We refer to the child by her initials and to other family members by their relationship to the child. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]*See* Tex. R. Jud. Admin. 6.2(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (requiring appellate court to dispose of appeal from judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

## I. BACKGROUND

Mother and Father were previously married and had a child, L.C., together. They were divorced by a final decree signed in December 2019. The divorce decree's terms were based on a mediated settlement agreement signed in October 2019.

Prior to the divorce, Father was convicted of two felony offenses. In June 2018, Father was convicted in Virginia of reproducing or transmitting child pornography and was sentenced to five years in prison. His sentence was suspended, and he was placed on three years' probation.[3] In January 2019, Father was adjudicated guilty in Texas of evading arrest with a vehicle and sentenced to ten years in prison.[4]

Father was incarcerated in Texas for the evading-arrest offense when the mediated settlement agreement and divorce decree were signed. The divorce decree explicitly acknowledged Father's incarceration and set forth a parenting plan that took his incarceration into account and provided him the opportunity to have increased possession of and access to L.C. upon his release.

In March 2021, while Father was still incarcerated,[5] Mother filed a petition to terminate Father's parental rights to L.C. In response, Father filed an answer, a

---

[3]In September 2023, Father was found guilty of violating his probation on the child-pornography charge and was placed on an additional three years of probation.

[4]Father was originally placed on deferred-adjudication community supervision for the evading-arrest offense, but he violated the terms of his community supervision and was adjudicated guilty in January 2019.

[5]Father was released from prison in December 2021.

motion to enforce his possession rights to L.C. under the divorce decree, and a counterclaim seeking the modification of the parent–child relationship to authorize him to designate L.C.'s primary residence.

In April 2024, the trial court held a bench trial on Mother's petition to terminate Father's rights and Father's counterclaim for modification of the parent–child relationship. Following the trial, the trial court found by clear and convincing evidence that Father (1) had "failed to support [L.C.] in accordance with his ability during a period of one year ending within six months of the date of the filing of [Mother's] petition" and (2) had "been convicted or placed on community supervision . . . for being criminally responsible for the death or serious injury of a child under [S]ection 43.26 of the Texas Penal Code." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(F), (L). It further found by clear and convincing evidence that termination of Father's parental rights was in L.C.'s best interest. *See id.* § 161.001(b)(2). Based on these findings, the trial court signed an order terminating Father's parental rights.[6] At Father's request, the trial court issued findings of fact and conclusions of law. Father filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

---

[6]In its original termination order, the trial court also found by clear and convincing evidence that Father had "voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(A). But because the parties agreed that the record contained insufficient evidence to support this finding, the trial court signed an amended termination order deleting it.

4

## II. DISCUSSION

As noted, Father raises four appellate issues. But we need to address only three of them to dispose of this appeal.

## A. Father Waived His Res Judicata Challenge to the Trial Court's Subsection (L) Finding

In his first issue, Father contends that the evidence is insufficient to support the termination of his parental rights under Subsection (L) because res judicata barred the trial court from considering his child-pornography conviction, which predated the signing of the mediated settlement agreement in Mother's and Father's divorce case, and because the record does not reflect that he has committed any criminal conduct since the mediated settlement agreement was signed. *See id.* § 161.001(b)(1)(L). But res judicata is an affirmative defense that is waived unless it is properly pleaded. *See* Tex. R. Civ. P. 94; *In re S.H.*, No. 02-17-00188-CV, 2017 WL 4542859, at *14 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.); *see also Green v. Parrack*, 974 S.W.2d 200, 202 (Tex. App.—San Antonio 1998, no pet.) ("Generally, res judicata must be pl[ead]ed or be waived."). In his answer, Father did not assert res judicata as a defense. Thus, he has waived his res judicata challenge to the trial court's Subsection (L) finding.[7] *See S.H.*, 2017 WL 4542859, at *14 (holding that mother had waived

---

[7]Father notes that he orally "called th[e] res judicata issue to the [t]rial [c]ourt's attention" during the trial and during the hearing on his motion for new trial, but these untimely assertions of the res judicata defense were insufficient to prevent waiver. *See Est. of Riefler*, No. 02-19-00189-CV, 2020 WL 7063486, at *4 (Tex. App.—Fort Worth Dec. 3, 2020, no pet.) (mem. op.) (holding that appellant had waived

argument that the Texas Department of Family and Protective Services was barred by res judicata from terminating her parental rights based on a Rule 11 agreement because she had failed to affirmatively plead res judicata as a defense).

We overrule Father's first issue.[8]

## B. Sufficient Evidence Supports the Trial Court's Best-Interest Finding

In his third issue, Father contends that the evidence is legally and factually insufficient to support the trial court's finding that terminating his parental rights was in L.C.'s best interest. We disagree.

### 1. Applicable Law and Standard of Review

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth

res judicata defense by failing to plead it even though he had raised it in a motion for new trial); *Whitley v. Whitley*, 566 S.W.2d 660, 662 (Tex. App.—Beaumont 1978, no writ) (holding that the trial court had "erred in sustaining an oral plea of res judicata" because the defendant had failed to properly plead it as an affirmative defense).

[8]Because Father waived his challenge to the trial court's finding under Section 161.001(b)(1)(L) and because only one finding under Section 161.001(b)(1) is necessary to support termination, we decline to address Father's second issue in which he challenges the sufficiency of the evidence supporting the trial court's finding under Section 161.001(b)(1)(F). *See* Tex. R. App. P. 47.1; *In re E.P.C.*, 381 S.W.3d 670, 684 n.3 (Tex. App.—Fort Worth 2012, no pet.) (en banc).

of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

Due process demands the heightened standard of clear and convincing evidence because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982)); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *E.R.*, 385 S.W.3d at 554 (citing *Santosky*, 455 U.S. at 747–48, 102 S. Ct. at 1391–92). For the same reason, we carefully scrutinize termination proceedings and strictly construe involuntary-termination statutes in the parent's favor. *E.N.C.*, 384 S.W.3d at 802; *E.R.*, 385 S.W.3d at 563; *Holick*, 685 S.W.2d at 20–21.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *Z.N.*, 602 S.W.3d at 545. The factfinder may draw inferences,

7

but they must be reasonable and logical. *Id.* We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.*; *J.F.C.*, 96 S.W.3d at 266. That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the petitioner proved one or more of the conduct-specific grounds on which the termination was based and that the termination of the parent–child relationship would be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both a Subsection (b)(1) predicate ground and best interest. *Id.* at 249; *C.H.*, 89 S.W.3d at 28. Factors that the trier of fact in a termination case may also use in determining the best interest of the child include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.*

## 2. Analysis

Here, the evidence is legally and factually sufficient to show that termination of Father's parental rights to L.C. is in the child's best interest. As noted, Father has been convicted of two felony offenses, including the reproduction or transmission of child pornography.[9] *See In re E.J.*, No. 02-23-00113-CV, 2023 WL 6475421, at *8 (Tex. App.—Fort Worth Oct. 5, 2023, no pet.) (mem. op.) ("A parent's criminal history is 'directly relevant to the best-interest determination.'" (quoting *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *7 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.))); *see also In re J.R.*, No. 02-15-00394-CV, 2016 WL 1267937, at *6 (Tex. App.—Fort Worth Mar. 31, 2016, no pet.) (mem. op.) (holding that father's possession of child pornography was relevant to best-interest evaluation); *In re J.L.C.*, No. 09-14-00466-CV, 2015 WL 575420, at *3–4 (Tex. App.—Beaumont Feb. 12, 2015, no pet.) (mem. op.) (considering father's child-pornography offenses in best-interest analysis); *In re C.M.T.*, No. 07-14-00300-CV, 2014 WL 7149263, at *3–4 (Tex. App.—Amarillo Dec. 12, 2014, no pet.) (mem. op.) (same). Further, Father is still on probation for the child-pornography offense and is a registered sex offender; these factors would complicate any plans for him to raise L.C. because he is prohibited from, among other things, having unsupervised contact "with any unrelated minor

---

[9]Father argues that the trial court was barred by res judicata from considering evidence relating to his criminal history in assessing whether termination was in L.C.'s best interest. But, as noted above, Father waived his res judicata defense. *See supra* Section II.A. Thus, the trial court was free to consider this evidence.

children," going within one hundred feet of "the premise[s] of any place owned or operated by a locality that he knows or should know is a playground, athletic field or facility, or gymnasium," and entering a school without permission during school hours or during school-related or school-sponsored activities. *Cf. C.M.T.*, 2014 WL 7149263, at *3 (considering as evidence supporting trial court's best-interest finding that father's "criminal conviction and its consequences . . . complicate[d] his plans to raise" the child because, inter alia, even after being released from prison he would be placed on probation and would be required to register as a sex offender and would be prohibited from contacting "any child under the age of [eighteen] other than his biological children"). The record also reflects that Father has violated his probation terms by living in an apartment located within a child-safety zone.[10] *See In re A.O.*, No. 02-21-00376-CV, 2022 WL 1257384, at *15 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.) (affirming termination when mother had "violated the Penal Code, . . . her community supervision, and . . . the conditions of her bond"). In addition, the trial court found that Father has not maintained a stable residence since 2019 and that he "lacks the parenting ability to support . . . or understand [L.C.'s] developing needs in the past, present, or future," and Father acknowledges that these findings have support in the record. *See Holley*, 544 S.W.2d at 371–72 (listing best-interest factors, including the stability of the parent's home and the parental abilities

---

[10]After Father's status as a sex offender was brought to the apartment manager's attention, Father and his current wife were evicted.

11

of the individual seeking custody). The record also reflects that Mother has good parenting skills and is taking good care of L.C., who is flourishing in her current environment. *See In re J.G.S.*, 550 S.W.3d 698, 705 (Tex. App.—El Paso 2018, no pet.) (concluding that the fact that the child was "well-cared for by her aunt and uncle" and was "doing well in her placement" supported the trial court's finding that termination was in the child's best interest); *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (considering the fact that child was being well cared for by foster parents as a factor in best-interest determination).

The only evidence Father identifies that is contrary to the trial court's best-interest finding is the fact that the court-appointed child-custody evaluator did not recommend that his parental rights be terminated. But the child-custody evaluator noted in her report that "the blame th[at] [F]ather places on [L.C.], [M]other, and others caring for [L.C.] could lead to irreparable emotional damage to [L.C.]" and recommended that Father have no contact with L.C. until he underwent counseling and could demonstrate that he "will make positive and encouraging statements" to L.C. during all supervised visits. Thus, we cannot say that the child-custody evaluator's report precluded the trial court's best-interest finding.

Considering all of the evidence discussed above and the remainder of the record, we conclude that the trial court reasonably could have formed a firm belief or conviction that terminating Father's parental rights was in L.C.'s best interest.

Accordingly, the evidence is legally and factually sufficient to support the best-interest finding. *See C.H.*, 89 S.W.3d at 18–19.

We overrule Father's third issue.

## C. The Trial Court Did Not Abuse Its Discretion by Declining to Appoint an Amicus Attorney or an Attorney Ad Litem for L.C.

In his fourth issue, Father contends that the trial court abused its discretion by declining to appoint an amicus attorney or an attorney ad litem for L.C. We disagree.[11]

### 1. Applicable Law

In a private-termination suit, the Texas Family Code requires the trial court to appoint an amicus attorney or an attorney ad litem to represent the interests of the child "unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests." Tex. Fam. Code Ann. § 107.021(a-1). In other words, the statute requires the trial court either (1) to appoint an amicus or ad litem attorney for the child or (2) to make an affirmative finding that the child's interests can be adequately

---

[11]Mother argues that Father failed to preserve this issue because he raised it for the first time in a motion for new trial. But a number of courts—including this court—have held that a complaint concerning a trial court's failure to appoint an attorney ad litem or amicus attorney in a private-termination case may be raised for the first time on appeal. *See In re J.C.*, No. 02-23-00381-CV, 2024 WL 1480490, at *2 (Tex. App.—Fort Worth Apr. 5, 2024, no pet.) (mem. op.); *In re D.M.O.*, No. 04-17-00290-CV, 2018 WL 1402030, at *2 (Tex. App.—San Antonio Mar. 21, 2018, no pet.) (mem. op.); *In re K.M.M.*, 326 S.W.3d 714, 715 (Tex. App.—Amarillo 2010, no pet.); *Turner v. Lutz*, 654 S.W.2d 57, 58 (Tex. App.—Austin 1983, no pet.); *Arnold v. Caillier*, 628 S.W.2d 468, 469 (Tex. App.—Beaumont 1981, no pet.). Because we overrule Father's fourth issue on the merits, we need not address Mother's preservation argument. *See In re A.A.*, 670 S.W.3d 520, 525 n.13 (Tex. 2023).

represented by one of the parties and are not in conflict with that party's interests. *Id.*; *D.M.O.*, 2018 WL 1402030, at *3.

Although Section 107.021(a-1) allows a trial court to proceed without the appointment of an ad litem or amicus attorney if it makes the requisite finding, our sister courts have recognized that when—as here—parents are adversaries in a suit to terminate one parent's rights, the trial court can seldom find that one party adequately represents the interests of the child involved or that a party's interests are not adverse to those of the child. *D.M.O.*, 2018 WL 1402030, at *3 (quoting *K.M.M.*, 326 S.W.3d at 715); *see also Chapman v. Chapman*, 852 S.W.2d 101, 102 (Tex. App.—Waco 1993, no writ); *Barfield v. White*, 647 S.W.2d 407, 409 (Tex. App.—Austin 1983, no writ). In such cases, the parties are "usually 'very partisan' because they have some ulterior motive for the termination"; thus, they generally cannot adequately represent the child's interests. *In re A.S.*, No. 02-24-00072-CV, 2024 WL 2760529, at *4 (Tex. App.—Fort Worth May 30, 2024, no pet.) (mem. op.) (quoting *In re L.L.V.*, No. 05-22-01036-CV, 2023 WL 2726718, at *3 (Tex. App.—Dallas Mar. 31, 2023, no pet.) (mem. op.)); *see Chapman*, 852 S.W.2d at 102; *see also In re R.N.G.*, No. 11-02-00084-CV, 2002 WL 32344622, at *4 (Tex. App.—Eastland Dec. 12, 2002, no pet.) (not designated for publication); *Nichols v. Nichols*, 803 S.W.2d 484, 485–86 (Tex. App.—El Paso 1991, no writ); *Turner*, 654 S.W.2d at 59–60; *Barfield*, 647 S.W.2d at 409. "That said, by leaving appointment of an amicus or ad litem up to the trial court's discretion in private[-]termination cases[,] . . . the legislature has implicitly determined that one

14

parent may adequately represent the interests of the child in such cases, despite the inherently adversarial nature of the proceedings." *In re T.M.R.*, No. 13-21-00144-CV, 2021 WL 4998438, at *4 (Tex. App.—Corpus Christi–Edinburg Oct. 28, 2021, no pet.) (mem. op.); *see A.S.*, 2024 WL 2760529, at *2–5 (concluding that trial court had properly found that an amicus attorney or attorney ad litem was not necessary because the mother sought to terminate father's parental rights to protect the child from father's sexual behavior and there was no evidence that she sought termination for any other reason); *In re R.J.C.*, No. 04-09-00106-CV, 2010 WL 816188, at *1–3 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (same).

We review a trial court's finding that the child's interests will be represented adequately by a party to the suit for abuse of discretion. *D.M.O.*, 2018 WL 1402030, at *3 (citing *In re C.A.P.*, No. 04-12-00553-CV, 2013 WL 749825, at *2 (Tex. App.—San Antonio Feb. 27, 2013, pet. denied) (mem. op.)). To demonstrate an abuse of discretion, the appellant must show that the trial court acted in an arbitrary or unreasonable manner—i.e., without reference to guiding principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court does not abuse its discretion if there is "some evidence of a substantive and probative character" to support its decision. *Nsuh v. Ngumashi*, No. 02-24-00189-CV, 2024 WL 4898788, at *2 (Tex. App.—Fort Worth Nov. 27, 2024, no pet.) (mem. op.); *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.); *cf. Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.) (noting that "[t]he trial

court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record").

## 2. Analysis

On the record before us, we cannot conclude that the trial court abused its discretion by finding that "[n]o attorney ad litem or amicus attorney was necessary" because Mother "ha[d] no interest adverse" to L.C. and could adequately represent the child's interests.[12] The record reflects that Mother sought termination to protect L.C. from Father, who has a criminal history and whose manipulative behavior could cause L.C. to suffer "irreparable emotional damage" if it were allowed to continue.

---

[12]Relying on Rule 299a, Father argues that this finding was not "appropriate" and should be disregarded because it was recited in the trial court's termination order, not in its findings of fact and conclusions of law. *See* Tex. R. Civ. P. 299a. But Family Code Section 107.021(a-1) does not proscribe the inclusion of such a finding in a termination order. *See* Tex. Fam. Code Ann. § 107.021(a-1). Indeed, such a statutorily mandated finding is not the type of finding to which Rule 296—or Rule 299a— applies. *See Chapman*, 852 S.W.2d at 101–02 (rejecting argument that an appellate court could presume a finding that a child's interests were adequately represented by a party to a private-termination suit where the appellant failed to request findings of fact or conclusions of law because this "mandatory finding . . . is not . . . the type of finding contemplated by [Civil Procedure] Rule 296"); *see also Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 252 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc) (holding that findings in trial court's termination order that were "expressly required by [S]ection 161.206 of the Family Code, and which track[ed] the language of [S]ection 161.001(1)(E) of the Family Code, [were] not 'findings of fact' prohibited by Rule 299a"). And although Rule 299a provides that findings recited in a trial court's findings of fact and conclusions of law will control over those contained in the judgment "[*i*]*f there is a conflict*," Tex. R. Civ. P. 299a (emphasis added), in this case, there is no conflict. Accordingly, we reject Father's contention that the trial court's Section 107.021(a-1) finding should be disregarded.

Mother expressed her concern about how L.C. was being affected by her FaceTime calls with Father and testified that these calls had caused L.C. to experience anxiety. And unlike the plaintiffs in many private-termination cases, there is no evidence that Mother has a new "significant other" or romantic interest whom she wants to adopt L.C. or that she sought to terminate Father's rights for any purpose other than to protect L.C. *See A.S.*, 2024 WL 2760529, at \*4.

The only "potential conflict[s]" between Mother's and L.C.'s interests identified by Father stem from (1) Mother's supposed "financial interest" in the case based on the fact that one of her alleged termination grounds was predicated on Father's failure to make child-support payments and (2) Mother's request to legally change L.C.'s last name. But because the termination of parental rights also terminates parental duties, including the duty to provide support in the future, *Cade v. Stevens*, 207 S.W.3d 909, 911 (Tex. App.—Dallas 2006, no pet.) (citing *Swate v. Swate*, 72 S.W.3d 763, 771 (Tex. App.—Waco 2002, pet. denied)), it is unclear how Mother's seeking to terminate Father's parental rights would serve her financial interests. And Mother's desire to change L.C.'s last name does not suggest a conflict of interest. Indeed, the record reflects that L.C. already prefers to use Mother's last name, and it seems quite natural for a child to take her mother's last name if her father's parental rights have been terminated. Thus, Father has not shown that Mother's and L.C.'s interests conflict or that Mother was otherwise unable to adequately represent L.C.'s interests. *See* Tex. Fam. Code Ann. § 107.021(a-1).

17

In sum, considering the entire record, we cannot conclude that the trial court abused its discretion by declining to appoint an amicus attorney or attorney ad litem for the child in this case. *See id.*; *T.M.R.*, 2021 WL 4998438, at *5.

We overrule Father's fourth issue.

## III. CONCLUSION

Having overruled Father's dispositive issues, we affirm the trial court's termination order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: June 26, 2025